Filed 12/10/14  In re H.H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| In re H.H., a Person Coming Under the Juvenile Court Law. | C076421 |
| SUTTER COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.C.,<br><br>Defendant and Appellant. | (Super. Ct. No. DPSQ110006737) |

Debbie C., mother of minor H.H., appeals from orders of the juvenile court denying her petition for modification and terminating parental rights.  (Welf. & Inst.

1

Code, §§ 366.26, 388, 395.)[1]  Mother contends the juvenile court erred in denying her petition for modification and, as a result, reversal of the orders terminating her parental rights is required.  Disagreeing, we shall affirm.

**FACTS**

*Background*

The eight-month-old minor was removed from mother's custody in November 2011 due to mother's substance abuse and prior history of neglect and failure to reunify with her older children.  The juvenile court adopted a reunification plan in December 2011 which addressed mother's drug abuse and mental health problems and set visits at three times a week.

Mother began services and initially was in compliance with her service plan.  However, over time, mother failed to engage in substance abuse treatment plans.  At the time her services were terminated in August 2013, mother had failed four separate substance abuse treatment programs.  Mother tested positive for alcohol in July 2012 and had several "dilute" tests, the last in February 2013.  She had ongoing issues with securing stable housing, and was resistant to the offered mental health services.  She eventually sporadically attended therapy.  The therapist found she was minimally motivated to participate.  Mother consistently attended monitored visits with the minor and did complete a parenting class and had direct parenting coaching, but had ongoing difficulty demonstrating positive parenting techniques in visits.  However, the social worker did report the existence of a strong bond between mother and the minor.  Mother repeatedly minimized her problems and depended on others rather than developing independence and insight.  At the 18-month review hearing in August 2013, held 21

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

2

months after the minor's detention, the court terminated services, decreased visitation to once a week, and set a section 366.26 hearing to select a permanent plan for the minor.

Mother filed a petition for extraordinary writ challenging the setting order, which we denied.

*Petition for Modification and Section 366.26 Hearing*

Mother filed a petition for modification in February 2014 seeking return of the minor under a family maintenance plan. Mother alleged as changed circumstances that she had completed a 90-day inpatient program, maintained her sobriety, attended 12-step meetings, and had a stable living situation in a two-bedroom apartment. Mother alleged that returning the minor to her was in the minor's best interests because she had a bond with the minor and had consistently visited. Mother alleged there was currently no risk to the minor in returning to her custody because she had treated her substance abuse issues and had a safe, stable home.

The Sutter County Department of Human Services (Department) opposed the petition arguing circumstances were changing but not yet changed, mother had made no showing she completed the mental health aspect of her service plan, and the proposed order was not in the minor's best interests.

The report for the section 366.26 hearing stated the minor continued to have weekly monitored visits with mother. The visits were generally enjoyable but the minor separated easily at the end of the visit. Mother continued to have difficulty with positive parenting and was unaware she had missed the minor's birthday. The relationship was akin to playmates in a controlled setting. The minor was likely to be adopted by the current caretakers and removal from that home was likely to be detrimental to the minor.

At the combined hearing on the petition for modification and section 366.26 issues, mother testified she had graduated from the 90-day drug treatment program in November 2013 after its successful completion. She had then moved into a two-bedroom apartment with her boyfriend and contributed her food stamps and income from part-time

jobs to their finances.  Mother testified she attended several 12-step meetings a week and had no relapses since her release from the 90-day program.  She had not gone to the therapist because she was taking Prozac and did not think she needed therapy too.  She believed she had a parental relationship with the minor.

The court ruled:  "The Court is prepared to find that the mother has achieved a change of circumstances in regard to her own living condition.  That she has not met the burden of showing that a change of the court order is in the best interests of her daughter.  And that is not surprising in the least.  When the child is removed at the age of eight months and is now three years of age, the only parents that the child has known have been the foster parents.  This is why a parent must reunify within six months with an infant because inevitably the child will become bonded to someone else other than the parent.  [¶]  I've been doing this for a long time, Ms. C[.]  And frankly, I don't know what a parent in your position can do to overcome the natural bonding of your child with someone else.  The fact that the youngster is happy to see you or gives you a hug at visitation does not, in my mind at least, show that there is such a bond that it would be in the best interests of [the minor] to be returned to your custody.  [¶]  The law is very clear.  After your services were terminated, the emphasis is on permanency for the child.  And . . . the focus is not on the interests of the parents at this point.  The 388 is denied."

The court proceeded to the section 366.26 hearing.  Mother argued the beneficial parental relationship exception should apply.  The juvenile court found the minor was likely to be adopted and terminated parental rights.

## DISCUSSION

Mother argues the juvenile court abused its discretion in denying her petition for modification.  Mother asserts the court relied solely on the bond between the minor and the foster family and did not give sufficient weight to the parent/child bond.

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances

4

and a showing that the best interests of the child may be promoted by the proposed change.[2]  (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.)  "The parent requesting the change of order has the burden of establishing that the change is justified.  [Citation.]  The standard of proof is preponderance of the evidence.  [Citation.]"  (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.)  Determination of a petition to modify is committed to the sound discretion of the juvenile court and, absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld.  (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)  The best interests of the child are of paramount consideration when the petition is brought after termination of reunification services.  (*In re Stephanie M*., at p. 317.)  In assessing the best interests of the child, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability.  (*Ibid*.; *In re Marilyn H*. (1993) 5 Cal.4th 295, 309.)

The juvenile court's ruling reflects a clear understanding of the appropriate standards when hearing a petition to modify brought after reunification services have been terminated.  The court found mother had shown changed circumstances, but that she could not show the minor's interests in permanence and stability would be furthered by her return to mother's custody.  The court tried to explain to mother the difficulty, even with regular visitation, in maintaining a bond with an infant that was strong enough to outweigh the minor's needs for permanence and stability.

---

[2]  Section 388 provides, in part:  "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  (§ 388, subd. (a)(1).)  The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ."  (§ 388, subd. (d).)

In evaluating the best interests of the minor, the court is free to assess the relative strength of the minor's bond with the parent as opposed to the bond with the foster parent. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.) The court clearly gave consideration to both bonds and the evidence of the minor's actions which demonstrated the bond with mother. Although the social worker opined in the 18-month report that there was a strong bond between mother and the minor, there is no evidence of a bonding study. Further, the minor had no reaction to the decreased frequency of visitation following termination of services and continued to separate easily when visits ended. The juvenile court weighed all of the evidence before denying the petition for modification. No abuse of discretion appears.

Because we affirm the juvenile court's ruling on the petition to modify, we affirm the orders terminating parental rights.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                                              DUARTE          , J.



We concur:



      RAYE          , P. J.



      ROBIE          , J.

6