Filed 10/15/15  In re D.T.  CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D.T., a Person Coming Under the Juvenile Court Law. | C078501 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD233283) |
| Plaintiff and Respondent, | |
| v. | |
| Deborah S., | |
| Defendant and Appellant. | |

Deborah S., mother of the minor, appeals from orders of the juvenile court denying her petitions for modification and terminating her parental rights.  (Welf. & Inst. Code, §§ 388, 366.26, 395.)[1]  Mother contends the juvenile court abused its discretion in summarily denying her two petitions for modification without granting a hearing.  Many

_____

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

of the facts mother alleged as changed circumstances existed at the time the juvenile court terminated reunification services. As for the new facts alleged, at most they demonstrated changing circumstances, not changed circumstances. Furthermore, mother's conclusory assertions that a changed order would be in the minor's best interests are insufficient. We conclude there was no abuse of discretion and affirm.

BACKGROUND

Three days after she was born, a Sacramento County Emergency Response social worker placed the minor into protective custody because of mother's drug use and history of domestic violence with father. In April 2013, the Sacramento County Department of Health and Human Services (the Department) filed a section 300 petition alleging the minor was at substantial risk of suffering serious physical harm, abuse or neglect as a result of the parent's history of domestic violence; mother's history of substance abuse dating back to at least March 2005; and mother's failure to reunify with, and termination of her parental rights to, the minor's half siblings as a result of her substance abuse problems. (§ 300, subds. (b) & (j).) Father was incarcerated at the time the Department filed the petition. The juvenile court sustained the petition, finding true the allegations that the minor was at substantial risk due to mother's history of substance abuse and the failure to reunify with the minor's half siblings. The juvenile court dismissed the domestic violence allegation.

In earlier dependency proceedings involving the half siblings, mother graduated from a residential drug treatment program in 2005 and transitioned to outpatient treatment. She had relapsed repeatedly after her drug treatment in 2005, at one point smoking marijuana every two days for 18 months until June 2012. Mother failed to make progress in the reunification services and her parental rights to the half siblings were terminated in October 2006.

In this case, mother had a history of drug use and prostitution. The prostitution supported her methamphetamine and marijuana drug habit. Mother admitted smoking

2

marijuana and marijuana laced with methamphetamine; she also admitted smoking the drugs while pregnant with the minor. Mother missed three scheduled appointments for alcohol and other drug assessments. She was referred to drug treatment, entered Specialized Treatment and Recovery Services (STARS) on June 27, 2013, and entered drug court in October 2013. She failed to drug test, missed contacts with her recovery specialist, and failed to provide verification of support group attendance. Accordingly, she was found noncompliant and discharged from the program.

Mother refused residential treatment. In September 2013, she agreed to enter a transitional living program but was discharged for not following the rules. In October 2013, she agreed to a Volunteers of America detoxification program and residential treatment. She completed the treatment program and moved to a transitional living program in March 2014. As a result of her renewed efforts, on May 6, 2014, the juvenile court granted mother an additional six months of reunification services. On May 23, 2014, mother relapsed, using methamphetamine while on an unsupervised visit with the minor. Five days later, mother entered another residential treatment program. She left the program after less than two months, relapsing again by using methamphetamine and marijuana. She also resumed prostitution to support her drug habit. A stranger severely beat mother with a pipe while she was prostituting. She suffered numerous blows to the head and was hospitalized as a result of the beating.

Mother entered another 90-day residential treatment program on July 25, 2014, and was scheduled to be discharged on October 30, 2014. She was looking into transitional housing, and continuing an outpatient drug program. She was unemployed and did not have a high school diploma or GED. Mother had previously begun domestic violence counseling with WEAVE in March 2014, but was terminated from the program due to excessive absences. The Department recommended the minor be placed with a paternal cousin who lived in Illinois. The paternal cousin was also willing to adopt the minor. Mother believed if she had 18 months to focus on herself she would be ready to

support herself and the minor, and acknowledged the minor would be better off with the paternal cousin during that time.

The juvenile court terminated reunification services on October 20, 2014. The juvenile court granted the Department's request to change the minor's placement from foster care to placement with her paternal cousin in Illinois.

Mother regularly and consistently visited the minor throughout the proceedings. Visits went well and there appeared to be a bond between mother and the minor. After the child was placed in Illinois, mother could no longer visit, but maintained weekly telephone calls with the minor. The minor recognized mother's voice on the phone and smiled when she heard it. She did not, however, ask for her mother or father. The social worker noted there was not a strong bond between the minor and mother.

The minor had some health concerns and required prescription medication. She appeared to be developing normally and was active and engaging. She had no reported behavioral problems, and interacted well with other children. The minor had adjusted positively to her new home with her paternal cousin, who the minor referred to as "Ya Ya, mom or mommy."

Mother filed a section 388 modification petition on February 3, 2015, asking the juvenile court to place the minor with mother under dependent supervision. As changed circumstances, mother indicated she had been accepted as a resident of Mather Community Campus transitional living on October 22, 2014, and had been living there in full compliance with their requirements. Her compliance included drug testing, meeting with her case manager, classes, community services, and paying rent. She had been clean and sober since June 2014, continued to attend NA/AA meetings, continued to work with her sponsor, and was currently on step 4 in the program. She was enrolled in GED classes and seeking employment. As for the minor's best interests, mother pointed to her regular visitation with the minor prior to the minor's placement in Illinois and her regular telephone calls with the minor thereafter. Mother believed they had a close and strong

4

bond. She stated she had "taken great strides in continuing to alleviate the conditions which led to [the minor's] removal, and it is in the best interest of [the minor] that she be returned to the care and custody of her mother at this time."

The juvenile court denied the request without a hearing, finding it did not state new evidence or a change of circumstances. The juvenile court noted that from the time the minor was removed from mother's custody in April 2013, mother had at times achieved sobriety but subsequently relapsed. That history included completing a 90-day residential treatment program in March and relapsing within two months, and leaving another residential program before completing it. At the time the juvenile court terminated reunification services, mother had been living in a residential rehabilitation facility for approximately three months and was expected to be discharged in a few weeks. That information was available to the juvenile court when it made the original order. According to the trial court, mother's current sobriety, with a history that included periods of sobriety, did not constitute changed circumstances. In any event, even if mother's current sobriety and her efforts in the transitional living facility were changed circumstances, the juvenile court said it could not make a finding that returning the minor to mother's care was in the minor's best interests.

Mother filed another section 388 modification petition on March 16, 2015. She sought placement of the minor under a program of dependent supervision, or alternatively, the reopening of reunification services. As changed circumstances, mother reiterated her continued residency in, and compliance with, the requirements of transitional living, including random drug testing, meeting with her case manager, classes, community services, and paying rent. She had been clean and sober since June 2014, continued to attend NA/AA meetings, and worked with her sponsor. She was enrolled in GED classes and seeking employment. She sought domestic violence services from WEAVE and was on the waiting list for counseling sessions. As for the minor's best interests, mother reiterated her regular visitation and telephone contact and

5

again stated that she believed she and the minor shared a close and strong bond. She stated: "It is in [the minor's] best interests to be able to live with her mother. In the alternative, it is in [the minor's] best interests to re-open reunification services to the mother so that she may eventually reunify with her mother, whom she has a strong bond with. [The minor] has only been with her current caretaker for 4 months, while she has had a relationship with her mother since birth. Because the mother has made such great strides at addressing the reasons for dependency, it is in [the minor's] best interests to support the mother with return or re-opening of services with the goal of return so that [the minor] may spend the rest of her childhood with her mother." The juvenile court denied the petition without an evidentiary hearing, finding the request did not state new evidence or a change of circumstances.

The juvenile court then held a contested selection and implementation hearing. The juvenile court found the minor adoptable and that it was in her best interests to identify a permanent plan of adoption. Accordingly, the juvenile court terminated parental rights.

DISCUSSION

Mother contends the juvenile court abused its discretion in failing to hold an evidentiary hearing on her section 388 petitions. She argues the petitions presented new evidence and the requested orders might have served the minor's best interests. Mother claims she made a prima facie showing of changed circumstances based on the length of her sobriety (six and eight months, respectively), her continued compliance with transitional housing rules, and the fact that she was actively moving closer toward having a GED and a job. She also claims she made a prima facie showing that the proposed change in order was in the minor's best interests, based on her visitation schedule and ongoing telephone contact with the minor. We find no abuse of discretion.

To be entitled to an evidentiary hearing on a section 388 petition, a parent must make a prima facie showing of changed circumstances and that "the best interests of the

6

child . . . may be promoted by the proposed change of order." (§ 388; see *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1036; *In re Daijah T*. (2000) 83 Cal.App.4th 666, 672-673; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; *In re Jeremy W*. (1992) 3 Cal.App.4th 1407, 1414; Cal. Rules of Court, rule 5.570(e)(1).) More than general conclusory allegations are required to make this showing even when the petition is liberally construed. (*In re Edward H*. (1996) 43 Cal.App.4th 584, 593.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence . . . would sustain a favorable decision on the petition." (*In re Zachary G.,* at p. 806.) Where the petitioner does not plead facts showing the proposed change is in the minor's best interests, the court can properly deny the petition for modification on that ground without holding a hearing. (*In re Daijah T.,* at pp. 672-673; *In re Zachary G.,* at p. 806.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Jackson W*. (2010) 184 Cal.App.4th 247, 258.) Where, as here, the petition is brought when services have been bypassed or terminated and the selection and implementation hearing is pending, the best interests of the child are of paramount consideration. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.) In such a case, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability. (*Ibid.*; *In re Marilyn H*. (1993) 5 Cal.4th 295, 309.) We review the denial of a petition to modify for abuse of discretion; absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld. (*In re Stephanie M.,* at pp. 318-319; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Mother did not make either of the required showings. At the time the original order was made, mother had almost three months of sobriety, she did not have her GED or a job, and she had not completed, or regularly attended, domestic violence counseling. At the time of her modification petitions, mother had three and five months of additional sobriety. Although she was taking classes in pursuit of her GED and was "actively

7

seeking" employment, she still did not have her GED and did not have a job. And, while she was wait-listed for the WEAVE program, she still had not attended domestic violence counseling. The allegations in the petition indicated mother continued to improve, but there was no allegation she was ready to parent. In the face of mother's history, eight months of sobriety in a controlled environment is not sufficiently stabilized to demonstrate changed circumstances. Given mother's extensive history of substance abuse, repeated relapses after periods of sobriety, and repeated failures to follow through on and complete counseling, her claimed eight months of sobriety, and pursuit of education, employment, and counseling was, at best, changing circumstances not changed circumstances. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)

However, even if we were to assume that mother made a prima facie showing of changed circumstances based on her eight months of sobriety and continuing efforts to procure a job and an education, mother's allegations do not make a prima facie showing that reunification services, or a return of the minor to her, would be in the minor's best interests. The minor was taken into protective custody when she was three days old. Other than those first three days, the minor was never in mother's custody. Although mother visited regularly and continued with telephone contact, there was no evidence of a strong or parental bond between mother and the minor. The minor never asked about mother and there was no indication the minor had any difficulty separating after visits. The minor identified her paternal cousin and prospective adoptive mother as mommy. The minor has been living in her preadoptive home for months and has adjusted well to her new home. Other than mother's conclusory allegations that they shared a bond, and mother's conclusory assertions that placement with mother would be in the minor's best interests, mother made no factual allegations that a change in order would serve the best interests of the minor. Nor did mother assert any factual allegations that returning the minor to her care or providing her with reunification services, thereby delaying any adoption of the minor, would serve the minor's interests better than the stability and

8

permanence the minor would obtain through adoption.  (*In re Angel B*. (2002) 97 Cal.App.4th 454, 465.)

The allegations contained in the petitions did not establish a prima facie showing of changed circumstances or best interests.  Accordingly, the juvenile court did not abuse its discretion in denying the petitions without a hearing.

DISPOSITION

The orders of the juvenile court are affirmed.


                                                      _____/S/_____

                                                      Mauro, J.


We concur:


_____/S/_____
Nicholson, Acting P. J.


_____/S/_____
Butz, J.