111 Cal.Rptr.2d 810 (2001)
92 Cal.App.4th 378
In re LETICIA S., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Fredrick W., Defendant and Respondent;
Isiah S., Defendant and Appellant.
No. D037075.
Court of Appeal, Fourth District, Division One.
September 19, 2001.
Review Denied December 12, 2001.
*812 Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary Seiser, Deputy County Counsel, for Plaintiff and Respondent.
Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Respondent.
Mary Elizabeth Handy, under appointment by the Court of Appeal, for Minor.
*811 O'ROURKE, J.
Isiah S. appeals from the order granting Fredrick W. de facto parent status in the dependency proceedings filed on behalf of Isiah's daughter, Leticia S. Isiah contends the court abused its discretion by granting Fredrick de facto parent status because Fredrick's conduct was the reason the court found Leticia to be a dependent child. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND
Leticia was born in 1991 to Corina C. and Isiah. In 1992 Corina and Fredrick began a relationship and Leticia has lived with them since that time. Corina and Fredrick had a daughter, Sarina, in 1995.
In February 2000 the police conducted a probation search of Corina's residence and found methamphetamine and related drug paraphernalia on the kitchen table within reach of the girls. Fredrick and Corina had been smoking methamphetamine just before the police arrived. Accordingly, the San Diego County Health and Human Services Agency (the Agency) removed the girls from Corina's care.
In March 2000 the court made a true finding on the petition. Later that month, Fredrick applied to become Leticia's de facto parent. He asserted he (1) has known Leticia since she was one year old, (2) has had daily contact with her ever since, and (3) has been raising her as if she were his own by providing for her daily needs, disciplining her, and supporting her financially and emotionally. He contended Leticia calls him "Dad" and he refers to her as his daughter.
Based on these factors, the court granted Fredrick's de facto parent application. The court determined the order was in Leticia's best interests because Fredrick *813 had been her psychological and physical parent for the last eight years.

DISCUSSION
Isiah contends the court abused its discretion in granting Fredrick's de facto parent application because Fredrick's behavior was a basis for the juvenile court's finding Leticia was a dependent child.[1]
The concept of de facto parent has been judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed, on a day-to-day basis, the role of a parent, fulfilling the child's physical and psychological needs. (In re Kieshia E. (1993) 6 Cal.4th 68, 70-71, 23 Cal.Rptr.2d 775, 859 P.2d 1290; Cal. Rules of Court, rule 1401(a)(6).) The decision to grant de facto parent status depends on an assessment of the particular individual and the facts of the case. (In re Patricia L. (1992) 9 Cal.App.4th 61, 66-67, 11 Cal.Rptr.2d 631.) The juvenile court applies the preponderance of the evidence standard in making its factual findings and we review those findings for an abuse of discretion. (In re Michael R. (1998) 67 Cal.App.4th 150, 155-156, 78 Cal.Rptr.2d 842.) An abuse of discretion occurs when the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (In re Jasmine D. (2000) 78 Cal. App.4th 1339, 1351, 93 Cal.Rptr.2d 644.)
In determining whether a person should be accorded de facto parent status, the court must consider whether that person's behavior was the basis for a jurisdictional finding by the court. (In re Kieshia E., supra, 6 Cal.4th at p. 78, 23 Cal.Rptr.2d 775, 859 P.2d 1290.) If the applicant's action caused the child to be declared a dependent, that person has abandoned "the role of parent" and "by acting in a manner so fundamentally inconsistent with the parental role . . . forfeits any opportunity to attain the legal status of de facto parent." (Ibid.)
Here, the court detained Leticia because Fredrick and Corina left methamphetamine within her reach. For the same reason, the court made a true finding that Leticia came under the juvenile court's jurisdiction. Moreover, Fredrick has been an addict since he began living with Corina and Leticia. He smoked methamphetamine the day the police found the drugs. Leticia saw his drug pipe and, when the children were detained, presumptive tests concluded Sarina had methamphetamine in her system. In addition, Fredrick disciplined Leticia by hitting her, sometimes with a shoe.[2] Courts routinely remove children from their parents under similar circumstances. Leaving drugs within a child's reach, using drugs while responsible for a child's welfare, and hitting a child are not parental acts.
Leticia and Fredrick argue that In re Kieshia E. should not apply as it only applies to intentional acts and Fredrick's acts were "negligent." Using drugs and hitting children are not negligent acts. Regardless of whether Fredrick negligently left drugs on the table, he purposefully used them, which is sufficient to bring this matter under the aegis of In re Kieshia E.
*814 Fredrick also asserts that In re Kieshia E. only applies when the applicant has sexually or physically abused the child. However, In re Kieshia E. is not limited to cases of physical or sexual abuse, but also applies to an applicant whose drug use places children in his or her care at risk. The court in In re Kieshia E. disapproved of In re Rachael C. (1991) 235 Cal.App.3d 1445, 1 Cal.Rptr.2d 473. (In re Kieshia E., supra, 6 Cal.4th at pp. 78-80, 23 Cal. Rptr.2d 775, 859 P.2d 1290.) In In re Rachael C, the court allowed a child's caretakers to become de facto parents even though the child had been removed after drugs were found in their home and upon the child's dresser and bottle liners, and the child had drugs in her system. (In re Rachael C, supra, 235 Cal.App.3d at p. 1453, 1 Cal.Rptr.2d 473.) The court stated that the misconduct of the child's nonparental caretaker was irrelevant to the interests and policies favoring the caretaker's limited right of participation in dependency proceedings. (Id. at pp. 1452-1453, 1 Cal.Rptr.2d 473.)
The Supreme Court disagreed. "Once there is an adjudication that a child is within the jurisdiction of the juvenile court because a nonparental caretaker committed a substantial harm, such as sexual or other serious physical abuse, which is fundamentally at odds with `the role of parent,' the perpetrator's `protectible interest' . . . is extinguished." (In re Kieshia E., supra, 6 Cal.4th at p. 78, 23 Cal.Rptr.2d 775, 859 P.2d 1290.) Simply stated, when examining a de facto parent application, a court must first examine whether the applicant committed a substantial harm fundamentally at odds with the role of parent.
Moreover, contrary to Fredrick's argument that Leticia suffered no harm at his hands, he did hit her, which indisputably is harm. In any event, no case law holds that a child must actually be harmed by the applicant in order for the court to deny de facto parent status.[3] Instead, the court considers whether the applicant's conduct was a cause of the child being declared a dependent. Here, Fredrick's conduct was such a cause.
The court here also looked at the totality of the circumstances, including the cause of the dependency, to determine whether de facto status was appropriate. However, there is no indication in In re Kieshia E. that the Supreme Court intended for juvenile courts to look at the totality of the circumstances, or to weigh the applicant's culpability against other factors normally considered.[4] To the contrary, the opinion holds that if an applicant for de facto parent status is a cause for the dependency proceedings, the application must be denied.[5]
*815 By balancing these factors against Fredrick's actions as Leticia's psychological and physical parent, the court did not apply the law as enunciated by the Supreme Court. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.) The court abused its discretion in granting Fredrick's request for de facto parent status.

DISPOSITION
The order is reversed. The juvenile court is directed to enter a new order denying Fredrick's de facto parent application.
We concur: KREMER, P.J., and HUFFMAN, J.
NOTES
[1] Fredrick contends Isiah has waived his right to contest the court's order because he did not challenge the evidence Fredrick presented to the trial court. However, because Fredrick bore the burden of proof on the de facto parent issue, Isiah did not need to challenge the evidence below to raise the issue on appeal. (See In re Richard K. (1994) 25 Cal. App.4th 580, 589, 30 Cal.Rptr.2d 575.)
[2] Fredrick also used to hit Corina "all the time" and once dragged her by her hair.
[3] Juvenile dependency law in general does not require a child to be actually harmed before the Agency and the courts may intervene. (In re Eric B. (1987) 189 Cal.App.3d 996, 1002-1003, 235 Cal.Rptr. 22.)
[4] Those factors are whether the child is psychologically bonded to the adult; whether the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time and possesses information about the child, unique from the other participants in the process; whether the adult has regularly attended juvenile court hearings; and whether a future proceeding may result in an order permanently foreclosing any further contact with the adult. (In re Ashley P. (1998) 62 Cal.App.4th 23, 27, 72 Cal.Rptr.2d 383; In re Patricia L. (1992) 9 Cal.App.4th 61, 66-67, 11 Cal.Rptr.2d 631.)
[5] The court here was also confused about the nature of de facto parent status. Contrary to the court's belief, de facto parent status is a judicially created and maintained concept. (In re Brandon M. (1997) 54 Cal.App.4th 1387, 1393, 63 Cal.Rptr.2d 671.) Likewise, the court does not consider whether the order would be detrimental to Leticia or was in her best interests. To the contrary, the court considers the applicant's adherence to the role of parent and whether the applicant has information that is in the child's best interests for the court to receive. (In re Kieshia E., supra, 6 Cal.4th at pp. 76, 78, 23 Cal.Rptr.2d 775, 859 P.2d 1290; In re Patricia L., supra, 9 Cal.App.4th at pp. 66-67, 11 Cal.Rptr.2d 631.) Finally, contrary to the court's assumption it could terminate Fredrick's de facto parent status at will, de facto parent status ends only when the dependency is terminated or a changed circumstance no longer supports the status. (In re Patricia L., supra, 9 Cal.App.4th at p. 67, 11 Cal.Rptr.2d 631.)